**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-13-00255-CV**
_____

**IN RE COMMITMENT OF FREDRICK ROBERT KING JR.**

**On Appeal from the 435th District Court**
**Montgomery County, Texas**
**Trial Cause No. 12-08-08666-CV**

**MEMORANDUM OPINION**

A jury found appellant Fredrick Robert King Jr. ("King") to be a sexually violent predator, and the trial court rendered a final judgment with an order of civil commitment. *See* Tex. Health & Safety Code Ann. §§ 841.001-841.151 (West 2010 & Supp. 2013) ("SVP" statute). As defined by the Legislature, a sexually violent predator is a person who "(1) is a repeat sexually violent offender; and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." *Id*. § 841.003(a) (West Supp. 2013).

1

King was convicted of two separate offenses of indecency with two children. There is also evidence in the record that King admitted to a counselor that he sexually assaulted possibly more than ten but less than twenty children, although his statements to the counselor were at times inconsistent. Dr. Self, the State's expert, reviewed King's records which included references that King had multiple child victims. For his evaluation and analysis of King, Self reviewed the nature and details of the sexual offenses and a non-sexual criminal offense. Dr. Self concluded that King suffers from pedophilia, adult antisocial behavior, and alcohol problems, and that he has a behavioral abnormality.

On appeal, King raises three issues, each challenging the trial court's admission or exclusion of certain evidence during his trial. We conclude that King's issues are without merit, and we affirm the trial court's judgment.

STANDARD OF REVIEW AND PRESERVATION OF ERROR

We review the admission or exclusion of evidence under an abuse of discretion standard. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995); *In re Commitment of McCarty*, No. 09-12-00083-CV, 2013 WL 3354556, at *2 (Tex. App.—Beaumont June 27, 2013, pet. denied) (mem. op.). A trial court abuses its discretion when it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). We will not reverse a judgment on the admission or exclusion of evidence

2

unless the appellant establishes that the trial court's ruling was in error and that the error was reasonably calculated to cause and probably did cause the rendition of an improper judgment. *See McCarty*, 2013 WL 3354556, at *2; *see also* Tex. R. App. P. 44.1(a)(1).

To preserve error concerning evidentiary rulings, a party's objection must be timely, and it must specifically state the grounds on which the objection is based, if the grounds are not apparent from the context. Tex. R. Evid. 103(a)(1); Tex. R. App. P. 33.1(a); *Bushell v. Dean*, 803 S.W.2d 711, 712 (Tex. 1991) (op. on reh'g). Even if preserved, the erroneous "admission or exclusion [of evidence] is likely harmless if the evidence was cumulative, or if the rest of the evidence was so one-sided that the error likely made no difference." *Reliance Steel & Aluminum Co. v. Sevcik*, 267 S.W.3d 867, 873 (Tex. 2008) (footnote omitted).

EVIDENTIARY ISSUES

1. Admission of Evidence Regarding Details of Prior Offenses

At trial, King objected to the admission of evidence regarding his prior offenses (charged and uncharged). *See* Tex. R. Evid. 403, 705. One of the State's experts, Dr. Self, testified about the details associated with those offenses, most of which related to sexual acts against children. Dr. Self explained to the jury how and why the underlying offenses and factual information assisted him in evaluating King and in determining whether King has a behavioral abnormality that makes

3

him likely to engage in a predatory act of sexual violence. The trial court overruled King's objections and determined that the testimony should be admitted as evidence showing the basis of Dr. Self's opinion. *See* Tex. R. Evid. 703, 705.

This Court has previously held that, under Rule 705(a) of the Texas Rules of Evidence, an expert may disclose on direct examination, or be required to disclose on cross-examination, the underlying facts or data, and may discuss the defendant's prior offenses as part of the basis of the expert's opinion. *See, e.g.*, *In re Commitment of Camarillo*, No. 09-12-00304-CV, 2013 WL 2732662, at **3-4 (Tex. App.—Beaumont June 13, 2013, no pet.) (mem. op.); *In re Commitment of Day*, 342 S.W.3d 193, 197-98 (Tex. App.—Beaumont 2011, pet. denied). King acknowledges that Rule 705(a) permits experts to testify to such "basis" evidence, but he argues that its admission in his case was more prejudicial than probative. *See* Tex. R. Evid. 705(d).

Rule 705(d) provides that "[w]hen the underlying facts or data would be inadmissible in evidence, the court shall exclude the underlying facts or data if the danger that they will be used for a purpose other than as explanation or support for the expert's opinion outweighs their value as explanation or support or are unfairly prejudicial." Furthermore, if otherwise inadmissible evidence relied on by an expert is disclosed to the jury, the court, must, upon request, give the jury a

4

limiting instruction. *Id.* In this matter, the trial judge gave the following limiting instruction during trial, and a similar instruction was used in the jury charge:

> [H]earsay normally is not admissible[;] however certain hearsay information contained in records reviewed by experts is allowed into evidence through expert testimony. Such evidence is admitted only for the purpose of showing the basis of the expert's opinion.

King did not object to the trial court's limiting instruction given during Dr. Self's trial testimony; King did not request a different or an additional instruction; and he did not object to the limiting instruction contained in the jury charge. Although King argues the limiting instruction could not have mitigated the prejudicial effects of the "basis" evidence, we presume the jury followed the court's limiting instructions. *See In re Commitment of Day*, 342 S.W.3d at 199; *In re Commitment of Yaw*, No. 09-08-042 CV, 2008 WL 5096511, at *3 (Tex. App.—Beaumont Dec. 4, 2008, no pet.) (mem. op.) (citing *Turner, Collie & Braden, Inc. v. Brookhollow, Inc.*, 642 S.W.2d 160, 167 (Tex. 1982)).

King argues that "it is 'nonsense' to pretend that 'basis evidence' [described in Rule 705(a)] like that here (and in every other civil-commitment case) does not come in for its truth . . . despite what the trial court's limiting instruction says." We reject King's argument on this point. King made no objections at the time the basis evidence was offered into evidence at trial, and he did not make an objection to the reference in the State's closing argument; therefore the objection was waived.

5

We further disagree with King that the evidence should have been excluded because there was "other not-so-inflammatory evidence" in the record. King points to Dr. Self's testimony that recites his qualifications and experience in the field, explains his methodology, and describes the types of records he reviewed. As we noted, under Rules 703 and 705, the underlying facts or data on which Dr. Self based his opinion may be disclosed at trial. Dr. Self explained that his analysis of King's risk factors for reoffending with a sexually violent offense, a key factor in the behavioral abnormality evaluation, was supported by the details surrounding the underlying offenses. The use of the "basis" evidence, along with any tendency of the jury to give undue weight to the evidence, was mitigated by the limiting instructions. The trial court could have reasonably concluded that the disclosure of the factual details relating to the charged and uncharged offenses would be helpful to the jury to understand how the State's expert formed his opinion and the basis for that opinion.

Given the purpose for admitting the evidence under Rule 705, and the trial court's limiting instructions, the trial court properly balanced the competing interests under Rules 403 and 705(d), and could have reasonably concluded that the evidence was admissible and would not be unfairly prejudicial. *See* Tex. R. Evid. 403, 705(d); *In re Commitment of Simmons,* No. 09-11-00507-CV, 2013 WL 2285865, at **2-5 (Tex. App.—Beaumont May 23, 2013, no pet.) (mem. op.); *In*

6

*re Commitment of Ford*, No. 09-11-00425-CV, 2012 WL 983323, at \*2 (Tex. App.—Beaumont Mar. 22, 2012, no pet.) (mem. op.); *In re Commitment of Day,* 342 S.W.3d at 197-99. Accordingly, on this record, we hold that the trial court did not err in overruling King's objections or that the rulings probably caused an improper judgment. *See* Tex. R. App. P. 44.1. We overrule issue one.

2. Exclusion of King's Offer of Proof
About Living with His Mother or Looking for Work

In his second issue, King contends the trial court erred in not allowing him to testify that he had plans upon his release from prison to try to get a job and to live with his mother in Kansas.[1] The State contends that the excluded testimony of King's "future plans" was not relevant. In contrast, King argues the evidence was relevant as a response to Dr. Self's testimony that King had a "lifestyle instability," which Dr. Self testified was one of several factors he considered in his assessment of King. In evaluating King under the "instability" factor, Dr. Self testified:

> And that's kind of a theme that comes out with Mr. King over and over, is that--his inadequacy to meet the daily demands of life, you know, on his own, he can't hold a job, he can't get through an educational training program. I mean, in many regards he's inadequate to meet the daily demands of life and that lends to instability, that leads to stress, and Mr. King has already told us that his response to stress, one of the primary ones is sexual behavior.

---

[1] We note that Self testified to King's instability and his inability to "hold" a job, not that King cannot obtain a job, and King offered no testimony about circumstances regarding whether he could "hold" a job.

7

Prior to Dr. Self's testimony, the trial court allowed King to testify before the jury that he would be released from prison without supervision, that he intended to move back to his home state, and that he was going to look for work. Sustaining the State's objection to any further testimony regarding looking for work, the trial court instructed King's attorney to limit further questions to whether King has a "behavioral abnormality today."[2] Later, King made an offer of proof wherein he explained as follows:

> Q. [Defense Counsel]: The question that I had was -- generally was, how do you expect to make it in the free world when you're released from prison?
> A. [King]: Try to find me a -- at least a job somewhere that will hire ex-convicts, and without having a GED that's not going to be really easy, but I'll try.
> Q. Okay. What type of work, then, would you consider getting then?
> A. Probably similar, like where -- like fast-food restaurants or somewhere just out of sight, out of mind.
>     . . . .
> Q. And where do you plan -- when you're released, where do you plan on living?
> A. If possible, with my mom in Kansas.

---

[2]The State also points out in its appellate brief that King admitted in his response to requests for admissions that he had no job plans. Once admitted, a party's admission is a judicial admission, and a party cannot introduce conflicting testimony over an objection. *Marshall v. Vise*, 767 S.W.2d 699, 700 (Tex. 1989). "[A] party relying upon an opponent's pleadings as judicial admissions of fact must protect the record by objecting to the introduction of controverting evidence and to the submission of any issue bearing on the facts admitted." *Id.* (citing *Houston First Am. Sav. v. Musick*, 650 S.W.2d 764, 769 (Tex. 1983)). It is unclear on this record whether the State preserved that objection at trial. However, it is unnecessary for us to rely on that point in making our ruling, and we make no comment on whether such point was preserved or tried by consent.

Q. Okay.  And is your mom okay with that?
A. Yes.
Q. Does she know about that?
A. Yes, she's willing to take me in 100 percent.

The additional testimony King sought to present to the jury failed to provide any further detail about a particular job or his ability, if any, to hold a job. Given that King had already testified before the jury that he was going to move back home and look for work, the trial court could have reasonably concluded that the slight probative value, if any, of the excluded evidence was substantially outweighed by the needless presentation of cumulative evidence.  Tex. R. Evid. 403.

Nevertheless, assuming without deciding that the excluded evidence may have been relevant and that the trial court erred in excluding it, we must determine if the exclusion of the evidence constitutes "reversible error."  In order to establish "reversible error," the complaining party must show not only that the trial court erred in excluding the evidence, but also that the error probably caused the rendition of an improper judgment. *See U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 132 (Tex. 2012); *see also* Tex. R. App. P. 44.1(a)(1). The exclusion is likely harmless if the evidence was cumulative, "or the rest of the evidence was so one-sided that the error likely made no difference in the judgment." *State v. Cent. Expressway Sign Assocs.*, 302 S.W.3d 866, 870 (Tex. 2009); *see In re Commitment*

*of Hill*, No. 09-11-00593-CV, 2013 WL 772834, at \*\*10-11 (Tex. App.—Beaumont Feb. 28, 2013, pet. denied) (cumulative and harmless).

King's proffered testimony only related to one of many factors Dr. Self considered in arriving at his conclusion that King has a behavioral abnormality that makes him likely to commit a predatory act of sexual violence. Dr. Self testified to several risk factors for King's reoffending with a sexually violent offense: King's criminal history (of sexual offenses) and the details surrounding that history, his sexual deviance (pedophilia), intimacy deficits, his "lifestyle instability and criminality," which included long periods of unemployment, inability to hold a job, and "serious alcohol abuse," and his failure to complete the sex offender treatment program. The excluded evidence, even if relevant, was not crucial to a key issue in the case, and the judgment did not turn on the excluded evidence. The rest of the evidence regarding the risk factors for King's reoffending with a sexually violent offense was so "one-sided" that the excluded evidence likely made no difference in the judgment. We conclude that King failed to demonstrate that the excluded testimony probably caused the rendition of an improper judgment. We overrule issue two.

### 3. Dr. Self's Testimony Relating to the Statutory Screening Process

In his final issue, King asserts that the trial court erred in allowing Dr. Self to testify that King's case was submitted to a statutory administrative screening

10

process for determining his eligibility to be civilly committed as a sexually violent predator. Dr. Self testified that "two groups of experts in different fields have looked at it and said they believe [King] has a behavioral abnormality." Under the applicable portion of the SVP statute, preliminary assessments regarding the person are made by the Department of Criminal Justice (with the services of an expert), the multidisciplinary team which may request the services of an expert, and the State's attorney. *See* Tex. Health & Safety Code Ann. §§ 841.021-841.023 (West Supp. 2013), § 841.041 (West 2010). Therefore, in stating that "two groups of experts . . . have looked at it," Dr. Self could have been referring to the multidisciplinary team (MDT) and the preliminary assessment and screening process, as well as to the review by the State's attorney.

King acknowledges he failed to object to that part of Dr. Self's testimony. *See* Tex. R. App. P. 33.1(a)(1)(A); Tex. R. Evid. 103(a)(1). Nevertheless, King contends that the admission of the evidence created "fundamental error," and he claims he should be able to raise this point for the first time on appeal. We reject King's argument that the admission of this evidence was "fundamental error" or that it otherwise deprived him of a fair trial, and we hold that King waived this objection.

"Strong policy considerations" favor the requirement that parties must properly preserve error by voicing a timely and proper objection in the trial court.

11

*In the Interest of B.L.D.*, 113 S.W.3d 340, 350 (Tex. 2003). We note that the Texas Supreme Court has called fundamental error "a discredited doctrine." *Id.* (quoting *Cox v. Johnson*, 638 S.W.2d 867, 868 (Tex. 1982)). Only in rare instances has the Court found "fundamental error" in civil cases. *Cox*, 638 S.W.2d at 868. Those instances include (1) when the record shows on its face that the trial court lacked jurisdiction; (2) when certain types of error exist in juvenile delinquency cases; and (3) when the error "directly and adversely affects the interest of the public generally, as that interest is declared by the statutes or [the] Constitution of our State[.]" *See In re B.L.D.*, 113 S.W.3d at 350-52; *see also Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 577 (Tex. 2006). The alleged error raised by King pertaining to Dr. Self's testimony referencing the MDT does not fall within the narrow scope of the "fundamental error" doctrine recognized by the Texas Supreme Court.[3] If King believed that Dr. Self's testimony was incorrect, incomplete, or objectionable, King was required to object and bring it to the trial court's attention. Tex. R. App. P. 33.1. He did not, and therefore the objection was waived.

---

[3]King also cited to two out-of-state cases, one from Kansas and the other from Iowa. Both cases are distinguishable from the facts in the case at bar. Neither case involved an application of the Texas SVP statute, and neither case dealt with unobjected-to evidence from an expert. *See In re Foster*, 127 P.3d 277, 282-88 (Kan. 2006); *In re Det. of Stenzel*, 827 N.W.2d 690, 694-96, 704-08 (Iowa 2013).

Additionally, this Court has previously refused to apply the "fundamental error" doctrine in other SVP cases. SVP cases are civil in nature and are not quasi-criminal. *See In re Commitment of Martinez*, 98 S.W.3d 373, 375 (Tex. App.—Beaumont 2003, pet. denied); *see also*, *e.g.*, *In re Commitment of Adame*, No. 09-11-00588-CV, 2013 WL 3853386, at *3 (Tex. App.—Beaumont Apr. 18, 2013, no pet.) (mem. op.); *In re Commitment of Cox*, No. 09-11-00100-CV, 2012 WL 759049, at *1 (Tex. App.—Beaumont Mar. 8, 2012, pet. denied) (mem. op.).

Even if the objection had been preserved and the trial court had committed error by admitting the evidence, the admission of the evidence was harmless. There was sufficient evidence in the record that would support the jury's verdict, including, but not limited to, the pen packet, King's responses to the State's requests for admission, the other testimony from Dr. Self, and the testimony from King himself.

Finally, issues one, two, and three each challenge evidentiary rulings. In order to make "'[a] successful challenge to evidentiary rulings [it] requires the complaining party to show that the judgment turns on the particular evidence excluded or admitted.'" *In re Commitment of Romo*, No. 09-12-00598-CV, 2013 WL 5874615, at *3 (Tex. App.—Beaumont Oct. 31, 2013, no pet.) (mem. op.) (quoting *Alvarado*, 897 S.W.2d at 753-54). Given the evidence in the record, the admissions from King, his prior convictions, and the testimony from Dr. Self that

King suffers from a behavioral abnormality that makes him likely to engage in predatory acts of sexual violence, King has not demonstrated that the trial court's judgment turns on the particular evidence about which he complains in issues one, two, and three, and King has failed to demonstrate that the exclusion or admission of evidence in these issues probably caused the rendition of an improper judgment.

Having overruled all of King's issues, we affirm the judgment.

AFFIRMED.

_____
LEANNE JOHNSON
Justice


Submitted on December 13, 2013
Opinion Delivered January 23, 2014

Before Kreger, Horton, and Johnson, JJ.

14